# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KASSANDRA JACKSON,
        Plaintiff,

vs.

MICHAEL BACHMAN,
        Defendant.

Case No. 1:19-cv-422
Dlott, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

This matter is before the Court on defendant Michael Bahman's motion to dismiss (Doc. 31), plaintiff Kassandra Jackson's response (Doc. 33), and defendant's reply (Doc. 34). Plaintiff also filed a notice of additional authority (Doc. 35), attached to which is the Supreme Court of Ohio's opinion in a disciplinary action against defendant concerning the same incident at issue in this matter.

## I. BACKGROUND

The following facts are derived from plaintiff's amended complaint (Doc. 24). Prior to 7:45 a.m. on September 4, 2018, plaintiff arrived at the Hamilton County, Ohio courthouse to obtain a Civil Stalking Protection Order (CSPO) concerning a fellow church member. After entering and completing the necessary paperwork, a Clerk of Court's office employee notified plaintiff that she had missed the 8:10 a.m. deadline by which CSPO petitions must be filed in order to receive a same-day hearing. "Frustrated and confused," plaintiff proceeded to then-magistrate Bachman's (defendant's) fifth floor courtroom to request a hearing that day. (Doc. 24, PAGEID 234 at ¶ 12).

The events that followed were recorded by video without audio. Defendant's courtroom clerk, Donnie Long, talked with plaintiff for approximately two minutes and reiterated that her case could not be heard that same day. The discussion was heated and defendant's law clerk,

Alec Burkhart, observed the conversation from the courtroom via video recording and went to the hallway "to attempt to diffuse the situation." (*Id.*, PAGEID 235 at ¶ 18). When it became clear that no exception would be made for plaintiff, Mr. Burkhart walked back toward the courtroom and plaintiff walked down the hallway toward the exit. None of the conversation among plaintiff, Mr. Long, and Mr. Burkhart was picked up by the courtroom's audio recording system, but after its conclusion, the courtroom's audio recording system reflects an audible scream by plaintiff as she walked away from defendant's courtroom's entrance.

Approximately 10 seconds after the conversation concluded, defendant exited his courtroom, pursued plaintiff, "pointed at her and ordered her to stop and return to the courtroom." (*Id.* , PAGEID 236 at ¶ 30). Defendant continued to yell and point at plaintiff, eventually running after and catching up with her near the fifth floor stairwell. Defendant again ordered her to return to his courtroom and plaintiff began walking in that direction—followed by defendant. Plaintiff started to enter the main entrance of defendant's courtroom, but defendant "grabbed [plaintiff] with four fingers cupping her left should and his thumb in her neck and redirected her to the side entrance of the courtroom. [] With his hand still firmly on her shoulder and neck, [defendant] then forcibly directed [plaintiff] into the courtroom and then forced her into a chair in the jury box." (*Id.*, PAGEID 237 at ¶¶ 35-36). The direct physical contact between plaintiff and defendant lasted approximately 23 seconds.

Without telling plaintiff why she was being placed there or giving her an opportunity to explain or otherwise respond, the following exchange occurred:

> [Defendant to plaintiff]: Have a seat right in that jury box, and don't move.
> [Defendant to either Mr. Long or Mr. Burkhart]: "Get the sheriff up here."
> [Plaintiff]: "What? Why?"
> [Defendant to plaintiff]: If you open your mouth one more time, you're adding on

to your misery ma'am.
[Plaintiff]: What?
[Defendant]: Stop.  Now-now-now, let me see who is here for my 8:30 cases.
[Defendant calls several matters from his regularly scheduled docket.]
[Defendant]: . . . .  Deputies, [plaintiff] is in your custody for contempt of court
for causing a ruckus which interrupted our hearing.  Three days in jail.
[Plaintiff]: No.  No.  No.  No.
[Defendant]: Don't make it worse ma'am.
[Plaintiff resists deputies and screams several times.]
[Defendant]: Ten days.
[Defendant]: Why you sending me to jail?  Because I came here to get help?

(*Id.*, PAGEID 237-38 at ¶¶ 40-47).

Two days later, the administrative and presiding judge of the Hamilton County Court of

Common Pleas watched the video recording, mitigated plaintiff's penalty, and ordered her

released from custody.  After being informed that all of the judges of the Hamilton County Court

of Common Pleas felt that he should be let go, defendant resigned as magistrate.

Plaintiff originally filed her complaint pro se on June 14, 2019 (Doc. 3).  In her amended

complaint (Doc. 24), she alleges deprivation of her procedural and substantive Fourteenth

Amendment due process rights under 42 U.S.C. § 1983 (Counts I and II), violation of her First

Amendment rights (Count III), and violations of Ohio law through assault (Count IV), battery

(Count V), negligence and gross negligence (Count VI), and negligent infliction of emotional

distress (Count VII).

Defendant moves to dismiss all counts under both Federal Rule of Civil Procedure

12(b)(1) and (b)(6).  Defendant first asserts absolute judicial immunity from all claims, qualified

immunity from plaintiff's constitutional claims, and immunity for plaintiff's state law claims

under Ohio's Political Subdivision Tort Liability Act (PSTLA).  Defendant separately argues

that plaintiff's claims should be dismissed for lack of subject matter jurisdiction under the

*Rooker-Feldman* doctrine. *See D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 476 (1983) ("[T]he United States District Court is without authority to review final determinations of [state courts] in judicial proceedings."); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923) ("The jurisdiction possessed by the District Courts is strictly original."). Finally, defendant argues that plaintiff's state law assault and battery claims are time-barred.

## II.     STANDARDS OF REVIEW

Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Uzielli v. Frank*, 137 F. App'x 795, 798 (6th Cir. 2005) (quoting *Moir v. Greater Cleveland Reg'l Trans. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). "A Rule 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack." *FieldTurf USA, Inc. v. Sports Const. Grp., LLC*, 507 F. Supp. 2d 801, 803 (N.D. Ohio 2007) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). Facial attacks challenge the sufficiency of the jurisdictional allegations in the complaint, such that those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.* (citing *Ritchie*, 15 F.3d at 598). Defendant's *Rooker-Feldman* argument constitutes a facial attack on the sufficiency of the jurisdictional allegations of the amended complaint. *See Reguli v. Guffee*, 371 F. App'x 590, 595 (6th Cir. 2010) (citing *DLX, Inc. v. Ky.*, 381 F.3d 511, 516 (6th Cir. 2004), *rev'd on other grounds as stated in Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020) and construing *Rooker-Feldman* argument as a facial attack under Rule 12(b)(1)). The Court therefore construes all allegations in the light most favorable to plaintiff for purposes of defendant's Rule 12(b)(1) motion.

Likewise, in deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all

factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotation marks omitted) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.   ANALYSIS

### A. *Rooker-Feldman*

The Court begins with the *Rooker-Feldman* doctrine, which implicates the subject matter jurisdiction of this Court to consider plaintiff's claims. *See Durham v. Haslam*, 528 F. App'x 559, 565 (6th Cir. 2013) ("[T]he *Rooker-Feldman* doctrine concerns the subject-matter jurisdiction of the district court . . . and 'federal courts have a duty to consider their subject matter jurisdiction in regard to every case. . . .'") (citing *In re Squire*, 617 F.3d 461, 465 (6th Cir. 2010) and quoting *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)).

Defendant argues that plaintiff's claims are barred by the *Rooker-Feldman* doctrine

because they are, in effect, a collateral attack on her state court contempt conviction. Plaintiff argues in response that the injuries alleged in her complaint are distinct from the state court proceedings—emphasizing her position that "there was no case involving [her] before [defendant] on the date in question." (Pl.'s Resp., Doc. 33 at PAGEID 318).

The *Rooker-Feldman* doctrine "precludes 'lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments.'" *Skyway Inv. Corp. v. Tushman*, 541 F. App'x 536, 538 (6th Cir. 2013) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). The doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Subject matter jurisdiction is lacking under the *Rooker-Feldman* doctrine if: (1) the plaintiff is "the losing party in state court," *id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 531 (2011)); (2) the plaintiff is asking the district court to "'review and reject [ ]' those judgments, which were 'rendered before the district court proceedings commenced,'" *id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 284); and (3) the plaintiff's "injuries were 'caused[ ]' by the state-court judgment at issue." *Id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 284). "The pertinent inquiry . . . is whether the 'source of the injury' upon which [the] plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment." *Id.* (alteration in original) (quoting *Kovacic v. Cuyahoga Cnty. Dep't of Child. and Fam. Servs.*, 606 F.3d 301, 309 (6th Cir. 2010)) (quoting *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006)).

Defendant relies primarily on a single case for his argument that the *Rooker-Feldman* doctrine bars plaintiff's claims: *Arsan v. Keller*, No. 3:17-cv-121, 2017 WL 6398734 (S.D. Ohio Dec. 13, 2017). In that case, the plaintiff had been a party in a custody dispute. *Id.* at *1. She alleged that the *guardian ad litem*'s testimony in that proceeding violated her Fourteenth Amendment rights because it was based on ethnic, racial, and religious bias, and adversely affected the result in the custody case. *Id.* at *2. The court granted the *guardian ad litem*'s motion to dismiss on quasi-judicial immunity grounds. *Id.* at *3. The court remarked in a footnote, however (without deciding and without the parties having briefed the issue), that it was inclined to find that the *Rooker-Feldman* doctrine would deprive it of subject matter jurisdiction over the plaintiff's claims because "the [state court] proceedings and judgment . . . caused her injuries. . . ." *Id.* at *4 n.4.

Plaintiff does not appear to disagree with defendant's summation of applicable law, relying on *Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996)[1] ("If the injury alleged resulted from the state court judgment itself, *Rooker*[-]*Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment . . . res judicata may apply, but *Rooker*[-]*Feldman* does not."). Rather, she maintains that her injuries do not derive from defendant's contempt decision itself.

The Court does not find *Arsan* to be a useful basis for comparison. Aside from not actually deciding the *Rooker-Feldman* issue, the plaintiff's grievances in *Arsan* were tied to the result of the custody proceeding. *See Arsan*, 2017 WL 6398734 at *2 (summarizing the plaintiff's claims as alleging that the defendant's actions had an "adverse effect upon this

---

[1] The Sixth Circuit has favorably cited this portion of the Seventh Circuit's reasoning. *See, e.g., Stemler v. Florence*, 350 F.3d 578, 589 (6th Cir. 2003).

[custody] case" and "ensure[d] that custody of [her son] be given to [the boy's father.]").  Here,

by contrast, plaintiff alleges claims of assault, battery, negligence, and negligent infliction of

emotional distress claims  (Counts IV-VII) that are independent from defendant's decision to

convict her of contempt and relate instead to defendant's physical actions towards her.  The

Court does not find that the *Rooker-Feldman* doctrine bars these claims.

There is one exception, however, which is the portion of plaintiff's negligence claim

(Count VI) that explicitly relates to defendant's decision to find plaintiff in direct contempt—

inviting this Court's collateral ruling as to the substance of that decision.[2]  (*See* Doc. 24,

PAGEID 248 at ¶¶ 149-50).  As such, to the extent that Count VI of plaintiff's amended

complaint alleges negligence in defendant's decision to impose direct contempt, it is barred by

the *Rooker-Feldman* doctrine.

Plaintiff's constitutional claims do not appear to implicate review of the merits of

defendant's decision to find plaintiff in contempt.  *See Johnson v. Ohio Sup. Ct.*, 156 F. App'x

779, 782 (6th Cir. 2005) (the *Rooker-Feldman* doctrine bars jurisdiction in "(1) cases where . . .

issues raised and decided in the state courts are presented to the federal district courts for

reconsideration; and (2) cases where . . . the federal district courts must review the state court

---

[2] The Sixth Circuit has summarized Ohio's criminal contempt law as follows:

> [C]riminal contempt . . . may be termed indirect or direct.  *See In re McGinty*, [507 N.E.2d 441, 445 (Ohio Ct. App. 1986)]; *In re Carroll*, [501 N.E.2d 1204, 1208 (Ohio Ct. App. 1985)].  Indirect contempt occurs when the contemnor's actions occur outside the presence of the court.  *See In re McGinty*, 507 N.E.2d at 445; *see also In re Gonzalez*, [591 N.E.2d 1371, 1373 (Ohio Ct. App. 1990)].  Whereas, direct contempt "is an act 'of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.[']"  *In re McGinty*, 507 N.E.2d at 445 (citing Ohio Rev. Code § 2705.01). . . .  [D]irect contempt may be summarily punished. . . .

*Hanner v. O'Farrell*, 142 F.3d 434, 1998 WL 136212 at *3 (6th Cir. 1998) (Table) (per curiam) (footnote omitted).

judgments to resolve the federal claims.") (citations omitted). Plaintiff's procedural due process claim concerns the deprivation of her opportunity to be heard, lack of counsel, and physical abuse. (*See* Doc. 24, PAGEID 241 at ¶¶ 81-85). Plaintiff's substantive due process claim is premised on her "right to be free from state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience." (*Id.*, PAGEID 243 at ¶ 98). Finally, plaintiff's First Amendment claim alleges that her contempt conviction constituted illegal retaliation for protected speech. (*Id.*, PAGEID 244 at ¶¶ 107-109). Construed in plaintiff's favor, none of these claims would necessarily disrupt the merits of the contempt conviction itself. *See Catz v. Chalker*, 142 F.3d 279, 294 (6th Cir. 1998), *opinion amended on denial of reh'g on other grounds*, 243 F.3d 234 (6th Cir. 2001) (reversing district's court's denial of the plaintiff's claim based on *Rooker-Feldman* where the plaintiff's "due process allegation d[id] not implicate the merits of the divorce decree, only the procedures leading up to it.").[3]

In sum, only plaintiff's negligence claim (Count VI)—as it relates to defendant's finding plaintiff in direct contempt—presents a *Rooker-Feldman* bar to this Court's jurisdiction. To the extent that plaintiff's negligence claim relates to defendant's physical actions (*see* Doc. 24, PAGEID 248 at ¶ 151), neither it nor Counts I-V or VII implicate the doctrine.

B. Judicial Immunity

Defendant argues that he is entitled to absolute judicial immunity. He argues that all of his actions toward plaintiff on September 4, 2018 were those normally performed by a judge and

---

[3] The Sixth Circuit has since limited the applicability of certain parts of *Catz* in view of the Supreme Court's more recent decision in *Exxon Mobil*. *See Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006). The cited principle, however, is unaffected by *Exxon Mobil*.

were taken in his judicial capacity.  Defendant also argues that, at most, plaintiff alleges that he exceeded the scope of his jurisdiction and that such conduct remains shielded by absolute judicial immunity.

Plaintiff argues in response that defendant's actions were not those of a judge, but rather, those of a deputy sheriff or bailiff.  Plaintiff also argues that the initiation of contempt proceedings is a non-judicial act.  Finally, plaintiff argues that defendant acted in the absence of all jurisdiction because "[s]he had done nothing to invoke the court's jurisdiction" and "was simply a member of the public who offended [defendant]'s sensibilities as to what constituted decorum in the courthouse."  (Pl.'s Resp., Doc. 33 at PAGEID 312).  Plaintiff emphasizes that her scream, which appears to have triggered defendant's actions, did not disrupt court proceedings as reflected by the lack of any reference to a disturbance in defendant's contempt order; rather, she argues that only *defendant's* actions were disruptive of court proceedings.

Defendant argues in reply that plaintiff's arguments are either unsupported by authority or supported by distinguishable authority.  He also argues that plaintiff's amended complaint "concedes" that defendant's actions were precipitated by her scream, "which interrupted the civil forfeiture case in progress."  (Def.'s Reply, Doc. 34 at PAGEID 327).

Judges are largely immune from liability for acts they commit while functioning within their judicial capacity.  *See Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citing *Mireles v. Waco*, 502 U.S. 9, 9, 11-12 (1991) (per curiam)).  A plaintiff will overcome a claim of judicial immunity only where: 1) the judge's actions were clearly non-judicial in nature and therefore outside the scope of the judge's judicial capacity; or 2) the judge's actions were taken in the absence of all jurisdiction.  *Mireles*, 502 U.S. at 11-12 (citations omitted).  The factors that are

relevant to whether an act is judicial in nature are: 1) "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge"; and 2) "whether [the parties] dealt with the judge in his judicial capacity." *Id.* at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The analysis of whether a judge's action for non-judicial is a functional one; "immunity is justified and defined by the *functions* it protects and serves, not by the persons to whom it attaches." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989) (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)). Judges retain immunity if they exceed their jurisdiction, such as convicting a defendant of a nonexistent crime, if they act in error, or if they act maliciously; judges lose immunity if they act without jurisdiction, such as a probate judge trying a criminal case. *Stump*, 435 U.S. at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

Plaintiff's amended complaint alleges that defendant took the following physical actions toward her:

- [Defendant] pointed at her and ordered her to stop [walking down the hall] and return to the courtroom.

- [Defendant] pursued [her] . . . yell[ed] at her, point[ed] at her and [told] her to return.

- [Defendant] . . . ran toward [her] . . . and again ordered her to return to the courtroom.

- [Defendant] followed her.

- [Defendant] grabbed [her] with four fingers cupping her left shoulder and his thumb in her neck and redirected her to the side entrance of the courtroom.

- With his hand still firmly on her shoulder and neck, [defendant] forcibly directed her into the courtroom and then forced her into a chair in the jury box.

(Doc. 24, PAGEID 236-37 at ¶¶ 30-32, 34-36). After these alleged actions, defendant held

11

plaintiff in contempt.

Plaintiff relies on *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984) for her proposition that "the initiation of accusatory processes, such as criminal prosecutions *or civil contempt proceedings*, is a non-judicial act that may subject a judge to liability." (Doc. 33 at PAGEID 311). This statement unduly stretches the holding in *Sevier*. Therein, the defendant judge was part of an arrangement by which he, as part of a contractual duty to collect overdue child support payments, would "instruct[] staff members . . . to initiate criminal prosecutions against fathers who are in arrears on their payments. The impending prosecutions [were] then used as leverage to extract signatures on consent orders that [were] approved by [the defendant judge] without hearings." *Sevier*, 742 F.2d at 272. The defendant judge then, with the aid of a juvenile court referee, "initiate[d] civil contempt proceedings against those fathers who d[id] not remain current on their payments under the consent orders. These fathers [we]re either incarcerated or [we]re required to make purge payments out of which [the defendant judge, the referee, and another employee] receive[d] part of their salaries." *Id.* Based on this unique fact pattern, the court found that the combination of "initiating *both* the criminal prosecution *and* the civil contempt proceeding" would constitute non-judicial acts if proven. *Id.* (emphasis added).

The isolated exercise of defendant's contempt power at issue here is not akin to the facts of *Sevier*. While it is less likely for an action to be judicial if it is not an adjudication between parties, *see Morrison,* 877 F.2d at 466 ("Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one."), the contempt power is an inherently judicial power. *See* Ohio Rev. Code § 2705.01 ("A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of *or so near the court or*

*judge as to obstruct the administration of justice*.") (emphasis added); Ohio Rev. Code § 2705.02 ("A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer. . . ."); *King v. Love*, 766 F.2d 962, 966 (6th Cir. 1985) ("[J]ailing persons for contempt of court is a function normally performed by judges. . . .").[4] The Court therefore finds that to the extent that plaintiff's claims concern defendant's holding her in contempt, which occurred in his courtroom and during normal business hours, his action was judicial in nature pursuant to the first prong of the *Mireles* analysis. Plaintiff's First Amendment claim (Count III), premised on defendant "convict[ing plaintiff] for exercising the right to free speech" (Doc. 24, PAGEID 244 at ¶ 108), should therefore be dismissed on the basis of absolute judicial immunity.[5]

Plaintiff also argues, for purposes of the second prong of the *Mireles* analysis, that defendant "took judicial action[s] . . . in the complete absence of any jurisdiction to act." (Pl.'s Resp., Doc. 33 at PAGEID 312). For this position, plaintiff relies on the facts that she was not a party to a case before defendant on the day in question, she had not invoked the jurisdiction of the court, she did not voluntarily enter his courtroom, and defendant's imposition of contempt did not adjudicate a dispute between parties. Plaintiff does not, however, cite any authority for this proposition and, as just discussed, an Ohio court's contempt power is not seriously debatable. Plaintiff's argument is more accurately described as one that defendant exceeded the

---

[4] Plaintiff's amended complaint admits as much: "As a Magistrate, Bachman had ultimate authority to impose contempt sanctions under Ohio Civil Rule 53(D)(8)." (Doc. 24, PAGEID 238 at ¶ 49).
[5] Plaintiff's negligence claim (Count VI), to the extent that it is premised on defendant's decision to impose direct contempt, would also be protected by absolute judicial immunity based on this reasoning. The Court, however, has already determined that it does not have subject matter jurisdiction over this claim based on the *Rooker-Feldman* doctrine. *See supra* pp. 8-9.

scope of his contempt power—a circumstance that does not disrupt absolute judicial immunity. *See Stump*, 435 U.S. at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. at 352). The Court therefore finds that defendant's holding plaintiff in contempt did not occur in the absence of all jurisdiction.

The nature of defendant's remaining actions towards plaintiff—forming the basis of Counts IV, V, VI (in part), and VII—is less clear. Defendant relies on *Triplett v. Connor*, 109 F. App'x 94 (6th Cir. 2004), for his argument that all of his actions towards plaintiff were judicial in nature. In *Triplett*, the defendant judge "knocked a tape recorder" from the plaintiff's hand "during a sidebar conference in the course of a housing discrimination trial in which [the plaintiff] was a party defendant represented by counsel." *Id.* at 95. The plaintiff also alleged that the defendant judge put his hand on the plaintiff's shoulder/neck area "in an effort to remove him from a side room where a conference had been called." *Id.* The Sixth Circuit concluded that while the defendant judge "may have been better advised to enlist the aid of a deputy, it has been long-established that it is a judge's 'obligation . . . to protect the sanctity and dignity of . . . courtroom proceedings. . . .'" *Id.* at 96 (quoting *Gregory v. Thompson*, 500 F.2d 59, 64 (9th Cir. 1974) (quoting *Mullins v. Oakley*, 437 F.2d 1217, 1218 (4th Cir. 1971)) (internal quotation marks omitted)).[6]

---

[6] The Ninth Circuit's broader holding in *Gregory*, in fact, supports plaintiff's position. Therein, the plaintiff (a non-attorney) accompanied a defendant (an Army Sergeant) in a traffic violation case to the defendant judge's courtroom to inform the defendant that he wished to represent the Army Sergeant. *Id.* at 61. The defendant's court was open on this day, but no proceedings were taking place in the Army Sergeant's case. *Id.* After informing the plaintiff that a non-lawyer could not represent the Army Sergeant, a confrontation ensued, and the defendant forced the plaintiff to the floor and beat him. *Id.* The plaintiff thereafter filed a § 1983 action. *Id.* The Ninth Circuit concluded that the physical assault was *not* protected by absolute judicial immunity. *Id.* at 64. The court acknowledged that exercise of the contempt power is "clearly judicial in character," but it elaborated:

It may even be necessary in an isolated instance to use physical force to preserve order. Though necessary, that does not mean the judge is immune. *The decision to personally evict someone*

14

The Court finds the question of judicial immunity to be a close one as it relates to those claims based on actions other than the imposition of contempt itself. The case law on the subject of absolute judicial immunity involves highly unusual fact patterns making comparison and analysis a unique challenge. Because of that, and given the Court's conclusion on the question of qualified immunity that follows, the Court finds it unnecessary to decide whether absolute immunity applies to shield defendant from liability for the balance of his actions at issue in this case.

In sum, the Court finds that defendant should be absolutely immune from liability related to her First Amendment claim (Count III), which is based on defendant having held her in contempt. As it relates to the balance of defendant's actions on September 4, 2018, the Court turns to the qualified immunity analysis.

---

*from a courtroom by the use of physical force is simply not an act of a judicial nature, and is not such as to require insulation in order that the decision be deliberately reached.* A judicial act within the meaning of the doctrine may normally be corrected on appeal. *See Pierson v. Ray*, [386 U.S. 547, 554 (1967)]. But when a judge exercises physical force in a courtroom, his decision is not amenable to appellate correction. More importantly, we cannot believe that the purpose of the judicial immunity doctrine—to promote 'principled and fearless decision-making'—will suffer in the slightest if it is held that judges who physically assault persons in their courtrooms have no automatic immunity.

. . .

*[The defendant's] choice to perform an act similar to that normally performed by a sheriff or bailiff should not result in his receiving absolute immunity for this act simply because he was a judge at the time.*

*Id.* at 64-65 (emphasis added).

In addition, the case relied on by the *Gregory* court for the quoted language in *Triplett*, *Mullins*, arose under facts significantly different from those bar. In *Mullins*, the defendant judge allegedly slandered the plaintiff. 437 F.2d at 1218. The Fourth Circuit found "no doubt," however, that the allegedly slanderous conversation concerned the defendant judge's belief that the plaintiff had been involved with improperly influencing the juries in active cases. *Id.* The court in *Mullins* concluded that the defendant judge's conduct with the plaintiff was "within his authority to protect the sanctity and dignity of the courtroom proceedings" and that he was therefore immune, "even if done improperly." *Id.* The alleged courtroom-control impetus for defendant's actions here is much less clear.

C. <u>Qualified Immunity</u>

Defendant argues that plaintiff's constitutional claims must fail because he did not violate any of plaintiff's clearly established constitutional rights.  Plaintiff argues that defendant violated her First Amendment right, as applied through the Fourteenth Amendment, to express criticism of the Hamilton County Court of Common Pleas when it jailed her without due process.

As an initial matter, plaintiff's response does not discuss her Fourteenth Amendment procedural and substantive due process claims (Counts I and II).  (*See* Doc. 33 at PAGEID 313-15).  The Court therefore finds that plaintiff has failed to meet her burden to show that defendant is not entitled to qualified immunity on these claims and considers only her First Amendment claim (Count III).  *See Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 695 (6th Cir. 2020) (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)) ("When defendants allege qualified immunity as a defense, the plaintiffs bear the burden of showing that the defendants are not entitled to qualified immunity.").

The qualified-immunity doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted).  The Court conducts a two-step inquiry when considering a claim for qualified immunity.  *See id.* (citing *Pearson*, 555 U.S. at 232).  At the first step, the Court asks whether the facts viewed in the light most favorable to the plaintiff show that the official has violated the plaintiff's constitutional rights.  *See id.* (citing *Pearson*, 555 U.S. at 232).  At the second step, the Court asks whether the right was clearly established at the time of the violation.

16

*Id.* (citing *Pearson*, 555 U.S. at 232). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks, citation, and alterations omitted) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). The Court may consider the steps of the inquiry in the order it chooses. *See id.* (citing *Pearson*, 555 U.S. at 242). Plaintiff has the burden to show that defendant is not entitled to qualified immunity. *See id.* (citing *O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir. 2011)). A cognizable civil rights claim must contain more than conclusory allegations and identify a specific constitutional right that has been allegedly violated. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983.").

In her response, plaintiff characterizes her hallway scream as an "expressi[on of] her dissatisfaction with the court system" and a "fleeting criticism of government" that is constitutionally protected. (Doc. 33 at PAGEID 313, 315). *See Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion."). But the actual allegations of the amended complaint do not tie plaintiff's scream to any particular point of view about the Hamilton County Court of Common Pleas or the government generally. In the amended complaint, plaintiff describes the yell passively and as occurring after the conclusion of the hallway conversation about the Hamilton County court's procedures with defendant's clerk. (*See* Doc. 24, PAGEID 235 at ¶¶ 23- 24) (("[Plaintiff] turned away and walked down the hallway towards the exit while Burkhart began to walk back toward the courtroom. It was at this point that a single scream is heard on the courtroom audio

17

recording system."). Later in the amended complaint, plaintiff characterizes the yell as "an expression of frustration. . . ." (*Id.*, PAGEID 241 at ¶¶ 82, 84). Nowhere in the amended complaint, however, does she articulate a connection between her scream and a criticism of government.

For the Court to find that governmental action was taken in retaliation for First Amendment speech by a private citizen, plaintiff must prove that "1) [s]he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)). Here, the Court finds that the complaint does not allege conduct deserving of constitutional protection for purposes of prong one. As explained above, plaintiff's amended complaint does not sufficiently allege that her scream was constitutionally protected speech.

Plaintiff also characterizes her direct contempt conviction and jailing as a denial of her "presumed [First Amendment] right of access the judiciary. . . ." (Pl.'s Resp., Doc. 33 at PAGEID 313) (citing *Huminski v. Corsones*, 396 F.3d 53, 83-85 (2d Cir. 2004)). *Huminski*, however, is distinguishable. The plaintiff in *Huminski* was a "long-time critic of the Vermont justice system" who had been a criminal defendant in the Vermont court system. *Id.* at 58. After the plaintiff disseminated his critiques of the Vermont justice system in various ways, several Vermont officials "broadly prohibited [the plaintiff's] presence in and around certain state courthouses." *Id.* At issue in *Huminski* were concerns about inhibiting a free "'marketplace of ideas' about the conduct of judges and the judicial system." *Id.* at 84 (citation omitted). By

contrast, here, in addition to plaintiff not having actually alleged that she criticized the government, plaintiff was not seeking access to the court in order to report on defendant or the court system in general, and plaintiff's contempt punishment was not aimed at broadly restricting her access to court proceedings. The Court does not find that *Huminski* supports plaintiff's position.

Having distinguished *Huminski*, plaintiff's First Amendment claim based on access to judicial proceedings is otherwise insufficiently vague to state a claim for relief. *Cf. Lillard*, 76 F.3d at 726; *United States v. Hoyt*, No. 1:15-cr-1, 2016 WL 776595, at *2 (S.D. Ohio Feb. 29, 2016) (explaining that the First Amendment contains a "*qualified* right of public access to judicial proceedings" determined based on (1) the tradition of accessibility in a given context and (2) whether experience and logic dictate that the public should be involved in a particular judicial proceeding) (emphasis added) (citing *Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8-9 (1986)). Plaintiff makes no allegation that defendant prevented her from accessing any particular judicial proceeding.

In sum, plaintiff does not rebut defendant's assertion of qualified immunity related to her Fourteenth Amendment claims (Counts I and II) and defendant is therefore entitled to qualified immunity on these claims. Because plaintiff has failed to sufficiently allege that she engaged in protected activity or was denied her presumed right of access to the judiciary under the First Amendment, defendant is entitled to qualified immunity related to her First Amendment claim (Count III).

D.  State Law Claims

Based on the analysis above, the Court finds that Count VI of plaintiff's amended

complaint should be dismissed, in part, on the basis of the *Rooker-Feldman* doctrine, Count III should be dismissed on both absolute judicial and qualified immunity grounds, and Counts I and II should be dismissed on qualified immunity grounds. This leaves only plaintiff's state court claims, over which the Court recommends declining jurisdiction given the preliminary status of the proceedings. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims. . . .") (citations omitted). There appear to be no "unusual circumstances" to warrant retaining jurisdiction following dismissal of plaintiff's federal claims on Rule 12(b)(6) grounds. *See id.* at 1255 (quoting *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987)). In the event the District Court should disagree, however, the Court now addresses defendant's arguments pertaining to plaintiff's state law claims.

### 1. *Statute of Limitations*

Defendant argues that plaintiff's state law assault and battery claims are time-barred under Ohio Revised Code § 2305.111(B). Under this code section, these causes of action accrue on the date of the assault or battery if the plaintiff knows the identity of the person that allegedly committed the tort and a claimant has one year to bring the action. *Id.* at § 2305.111(B)(1). Defendant therefore argues that the state law tort causes of action accrued on September 4, 2018, and that plaintiff's June 19, 2020 amended complaint did not timely assert them.[7]

---

[7] The undersigned previously held that plaintiff's first amended complaint (Doc. 24), filed within 21 days of defendant's first motion to dismiss (Doc. 17), was allowed as a matter of course under Fed. R. Civ. P. 15(a)(1). (*See* Doc. 30 at PAGEID 284-85).

Plaintiff argues in response that her amended complaint relates back to the date of the original pleading Rule 15, which states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. . . ." Fed. R. Civ. P. 15(c)(1)(B). Plaintiff notes that in addition to both complaints clearly relating to the same set of facts, the original pro se complaint went so far as to specifically reference "assault[]" and other physical contact initiated by defendant on plaintiff such that defendant should not be unduly surprised by the allegations of the amended complaint. (*See* Doc. 3 at PAGEID 12). Defendant does not respond to plaintiff's argument on this issue in his reply.

The Sixth Circuit has explained the relation-back analysis as follows:

Rule 15(c) is "'based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence.'" [*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007) (quoting *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999)). In short, "a court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence." [*Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000)]. Rule 15(c)(2) does not define the scope of the terms "conduct, transaction, or occurrence." When applying this standard to the facts of a given case, we give meaning to those terms "not by generic or ideal notions of what constitutes a 'conduct, transaction, or occurrence,' but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Bledsoe*, 501 F.3d at 516 (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one."). The Rule also must be interpreted in light of the "fundamental tenor of the Rules," which "is one of liberality rather than technicality." *Miller*, 231 F.3d at 248.

*Hall v. Spencer Cnty., Ky.*, 583 F.3d 930, 934 (6th Cir. 2009).

The Court finds that plaintiff's amended complaint satisfies the relation-back standard set forth in Fed. R. Civ. P. 15(c)(1)(B). The "conduct, transaction, or occurrence" set out in the original and amended complaints are identical. *Id.* The additional claims based on state law tort theories of liability should not come as an unwarranted surprise to defendant. Considering the liberal interpretation afforded to the Federal Rules of Civil Procedure, the Court finds that plaintiff's amendment should relate back to the date of the original complaint, June 4, 2019, which is within Ohio's one-year statute of limitations for plaintiff's state law assault and battery claims.

### 2. Political Subdivision Tort Liability Act

Defendant argues that plaintiff's tort claims are barred by the PSTLA based on the facts that the statute incorporates the doctrine of absolute judicial immunity and that no other exceptions to the statute's general grant of immunity apply. Plaintiff argues in response that the PSTLA carves out exceptions to immunity that apply to defendant, including situations in which an employee acts outside the scope of his authority, maliciously, wantonly, recklessly, or in bad faith.

To determine whether a political subdivision enjoys immunity under the PSTLA, Ohio courts generally employ a three-tiered analysis. *Hortman v. Miamisburg*, 852 N.E.2d 716, 718 (Ohio 2006). Courts are to first examine whether the political subdivision falls within the general immunization from liability under Ohio Rev. Code § 2744.02(A). *Id.* Courts are to next analyze whether an exception to immunity set out in Ohio Revised Code §§ 2744.02(B)(1)-(5) applies. *Id.* Finally, courts are to determine whether a defense under Ohio Revised Code §

2744.03 applies to reinstate immunity.  *Id.*

Under Ohio Revised Code § 2744.02, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision *or an employee of the political subdivision* in connection with a governmental or proprietary function."  *Id.* at § 2744.02(A) (emphasis added).  A "political subdivision" includes counties, such as Hamilton County.  *Id.* at § 2744.01(F).  "Governmental function[s]" include the judicial, quasi-judicial, and prosecutorial functions as well as law enforcement.  *Id.* at §§ 2744.01(C)(2)(f), (i).  Based on these provisions, the actions by defendant alleged in the amended complaint would fall under the general immunization from liability set forth in Ohio Revised Code § 2744.02(A).

Plaintiff does not argue that defendant's actions fall within a broad exception to immunity under Ohio Revised Code § 2744.02(B).  Rather, she argues that defendant, as an individual, fits within an exception to immunity laid out in Ohio Revised Code § 2744.03(A)(6).  *See Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) ("Whether the defendants are liable as individuals thus turns on the availability of statutory immunity. . . [and] whether any of the immunity exceptions § 2744.03(A)(6) apply.").  As applicable to plaintiff's argument, this code section provides:

> (6) In addition to any immunity or defense referred to in division (A)(7) of this section . . . , the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. . . ."

Ohio Rev. Code § 2744.03(A)(6). Defendant, in turn, relies on the incorporation of judicial immunity in the following subsection of the statute:

> The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is *entitled to any defense or immunity available at common law* or established by the Revised Code.

*Id.* at § 2744.03(A)(7) (emphasis added).

As the Court has already discussed, defendant's holding plaintiff in contempt was a judicial act that, at most, exceeded (as opposed to falling completely outside the bounds of) his jurisdiction. To the extent the *Rooker-Feldman* doctrine were not applicable, Ohio Revised Code § 2744.03(A)(7) would therefore incorporate the absolute judicial immunity discussed above to shield defendant from liability for the portion of plaintiff's state law negligence claim premised on defendant's finding plaintiff in direct contempt (Count VI). (*See supra* pp. 8-9, 13 n.5).

Plaintiff's remaining state law tort claims (Counts IV, V, VI (to the extent premised on defendant's physical contact with plaintiff (*see* Pl.'s Am. Compl., Doc. 24, PAGEID 248 at ¶ 151)), and VII) are not precluded by the statute's incorporation of the absolute judicial immunity doctrine. As such, the Court turns to Ohio Revised Code § 2744.03(A)(6) to determine whether another exception to immunity may apply.

Plaintiff first argues that defendant's actions were "manifestly outside the scope" of his employment. *Id.* at § 2744.03(A)(6)(a). She relies on *Jackson v. McDonald*, 760 N.E.2d 24, 28 (Ohio Ct. App. 2001), for the proposition that an act falls within this category if it severs the employee-employer relationship. In her amended complaint, plaintiff alleges that the incident at

bar resulted in the severing of defendant's employment by Hamilton County, albeit indirectly.

(*See* Doc. 24, PAGEID 239 at ¶¶ 67-69) (alleging that the judges of the Hamilton County Court of Common Pleas were leaning towards firing defendant for the incident at bar after viewing the video recording and/or learning of its contents and that plaintiff decided to preemptively resign).

The Court acknowledges that "wrongful act[s], even if . . . unnecessary, unjustified, excessive or improper" do not automatically remove an act from the scope of a defendant's employment for purposes of this exception. *See Jackson*, 760 N.E.2d at 28 (quoting *Elliott v. Ohio Dep't of Rehab. & Corr.*, 637 N.E.2d 106, 108 (Ohio Ct. App. 1994)). At the motion to dismiss stage, however, construing the facts alleged in a light most favorable to plaintiff, the Court concludes that plaintiff has sufficiently alleged that plaintiff's actions were manifestly outside the scope of his employment based on his related resignation of his position as magistrate for purposes of Ohio Revised Code § 2744.03(A)(6)(a).

Plaintiff also argues that defendant's actions were either taken with malicious purpose, in bad faith, or in a wanton or reckless manner. For purposes of Ohio Revised Code § 2744.03(A)(6)(b):

> "Malice" is the willful and intentional design to harm another through conduct that is unlawful or unjustified. *Morrison*[,529 F. Supp. 2d at 821] (citing [*Cook v. Cincinnati*, 658 N.E.2d 814, 821 (Ohio Ct. App. 1995)]). "Bad faith" involves a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id.* "Wanton misconduct" is the "failure to exercise any care whatsoever." *Id.*

*Phillips v. City of Cincinnati*, No. 1:18-cv-541, 2019 WL 2289277, at *9 (S.D. Ohio May 29, 2019) (quoting *LeFever v. Ferguson*, 956 F. Supp. 2d 819, 839 (S.D. Ohio 2013), *aff'd*, 645 F. App'x 438 (6th Cir. 2016)). "[R]ecklessness is a perverse disregard of a known risk." *O'Toole*

*v. Denihan*, 889 N.E.2d 505, 517 (Ohio 2008) (citations omitted).

Plaintiff's amended complaint alleges that defendant acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." (Doc. 24, PAGEID 240 at ¶ 76). Combined with other allegations of the amended complaint (*see id.* at PAGEID 236-40), the Court finds that, at a minimum, plaintiff sufficiently alleges that defendant took the actions giving rise to the claims in Counts IV, V, VI (to the extent premised on defendant's physical contact with plaintiff), and VII in a wanton or reckless manner such that they could fall within an exception to immunity. Additionally, "the issue of wanton misconduct [in the context of § 2744.03(A)(6)(b)] is normally a jury question." *Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994) (citation omitted).

In sum, plaintiff has sufficiently alleged that defendant's non-judicial actions fall within at least one exception to the PSTLA. *See* Ohio Rev. Code §§ 2744.03(A)(6)(a), (b). The Court therefore finds that, to the extent the District Court wishes to exercise supplemental jurisdiction over plaintiff's state law claims, dismissal under the PSTLA would be inappropriate at this stage of the proceedings.

## IV. CONCLUSION

The Court finds that plaintiff's constitutional claims are barred by absolute judicial (Count III) and qualified (Counts I-III) immunity. The Court finds that the *Rooker-Feldman* doctrine bars consideration of plaintiff's negligence claim (Count VI) in part and only to the extent that it explicitly relates to defendant's decision to find plaintiff in direct contempt. Finally, while the Court finds that plaintiff's state law claims (Counts IV-VII) should not be dismissed under the PSTLA at this stage of the proceedings and that her assault and battery

26

claims (Counts IV and V) are not time-barred, the Court finds that the District Court should not exercise supplemental jurisdiction over these claims given its conclusion that all federal claims be dismissed.

**IT IS THEREFORE RECOMMENDED THAT** defendant's motion to dismiss (Doc. 31) be **GRANTED**.

Date:  6/2/2021

Karen L. Litkovitz
United States Magistrate Judge

KASSANDRA JACKSON,                          Case No. 1:19-cv-422
      Plaintiff,                          Dlott, J.
                                                               Litkovitz, M.J.

      vs.

MICHAEL BACHMAN,
      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).